J-S67044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: X.A.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: X.V.-M., MOTHER | : : : : : : | |
| | : | No. 1250 EDA 2016 |

Appeal from the Order April 11, 2016
in the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s):  CP-51-AP-0000028-2016,
CP-51-DP-0002781-2014

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 12, 2016**

Appellant, X.V.-M. ("Mother"), appeals from the Order entered in the Court of Common Pleas of Philadelphia County on April 11, 2016, involuntarily terminating her parental rights to X.A.M. (born in November of 2014) ("Child"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

On November 9, 2014, this family became known to the Department of Human Services ("DHS") when DHS received a General Protective Services ("GPS") report.  The GPS report alleged that Mother tested positive

---

*Former Justice specially assigned to the Superior Court.

[1] L.F. ("Father") filed an appeal, *pro se*, of the trial court's Order involuntarily terminating his parental rights at Superior Court Docket No. 1516 EDA 2016.  That appeal is not before this Panel for consideration.

for the drug PCP, had been a victim of Father's domestic abuse, and had a history of mental health problems. On November 26, 2014, Mother asked her mother to care for Child. Child's maternal grandmother, in turn, took Child to an "aunt's" home.[2] On November 28, 2016, DHS visited the aunt's home and observed that the home did not have adequate food. That same day, DHS obtained an order for protective custody and placed Child in a Crisis Nursery program. On December 10, 2014, Child was adjudicated dependent.

On January 12, 2016, DHS filed a petition to involuntarily terminate Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and change Child's permanency goal to adoption. The trial court held hearings on the petition on January 28, 2016, and April 11, 2016. At these hearings, the trial court heard testimony from Amanda Fernandez, a Community Umbrella Agency ("CUA") caseworker and Mother. By an order entered April 11, 2016, the trial court terminated Mother's parental rights to Child and changed Child's goal to adoption.

---

[2] The trial court referenced an "aunt" in its opinions. However, neither the trial court's opinions nor the certified record specifies the aunt's relationship to Mother or Child.

- 2 -

On April 13, 2016, Mother timely filed the instant appeal, along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief, Mother raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother[] pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) where Mother presented evidence that she tried to perform her parental duties to the best of her abilities[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) where Mother presented evidence that she remedied her situation by participating in mental health treatment with medication management and drug treatment and has the present capacity to care for [Child][?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) where evidence was provided to establish that [Child] was removed from the care of Mother and Mother is now capable of caring for [Child][?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. [§] 2511(a)(8) where evidence was presented to show that Mother is now capable of caring for [Child] since [Mother] participated in drug treatment and mental health treatment[?]

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. [§] 2511(b) where evidence was presented that established Mother and Child were never given the appropriate environment for visiting each other[?]

Mother's Brief at 7.

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005) (citation omitted). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. This Court has previously stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. and J.G.*, *Minors*, 855 A.2d 68, 73-74 (Pa.Super. 2004). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of

- 4 -

parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004)(*en banc*).

Herein, we review the orders pursuant to Section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

When reviewing the statutory requirements, this Court has found:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [S]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [S]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order

- 6 -

to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004) (internal citations omitted).

In her brief, Mother contends she has never "evidenced a settled purpose of relinquishing her parental rights" to Child. Mother's Brief, at 15. Mother states that she participated in mental health treatment and drug treatment. ***Id.*** Mother avers that DHS was aware of Mother's mental health diagnosis and could have offered Mother "a more therapeutic setting" in which to visit Child. ***Id.*** Mother further argues that DHS should have used a parenting capacity evaluation to determine what additional services Mother might utilize to become a better parent. ***Id.***

The trial court found that "Mother, by her conduct, had refused and failed to perform parental duties." Trial Court Opinion ("TCO"), 5/24/16, at 7. The trial court stated:

> Mother's SCP[3] objectives were to maintain contact with CUA, visit Child and build a relationship with him, and engage in individual therapy, drug and alcohol treatment and mental health

---

[3] Refers to "single case plan."

- 7 -

treatment. Mother last attended drug and alcohol treatment and individual therapy in August 2015. She was never engaged in mental health treatment. Mother was originally given bi-weekly supervised visits, but these were changed to monthly visits because Mother did not attend. Mother made only one visit during the six months preceding the filing of the petition. Mother has not used her visits to build a bond with Child. In Mother's own words, "I had too much stuff to do at the same time." Mother admitted she had not made her visits even though she did not have a 9-to-5 job. Mother has an affirmative duty to perform parental duties, including visitation. Looking back beyond the six-month period, Mother's SCP goals have been the same since the start of this case, and she has successfully completed none of them. Mother has never been compliant with court orders.

*Id.* at 6-7 (citations to notes of testimony omitted).

Ms. Fernandez, the CUA caseworker, testified that Mother has been non-compliant with her SCP goals. N.T., 1/28/16, at 18. Ms. Fernandez stated that Mother discharged herself from group therapy after she was involved in an altercation with another group member and asked to choose another site for therapy. *Id.* at 49. Ms. Fernandez also related that Mother had made only two visits with Child since July of 2015. *Id.* at 16.

Mother testified she had not been receiving mental health treatment nor was she enrolled in drug and alcohol treatment. *Id.* at 53. As the trial court noted, "Mother has not used her visits to bond with Child. In Mother's own words 'I had too much stuff to do at the same time.' Mother admitted she had not made her visits even she did not have a 9-to-5 job." T.C.O., at 6.

Our Supreme Court recently rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of parental rights. *See In the Interest of: D.C.D.*, *a Minor*, 629 Pa. 325, 343, 105 A.3d 662, 673, 676 (2014) (rejecting suggestion an agency must provide reasonable efforts to enable parent to reunify with child prior to the termination of parental rights and suggestion that Section 2511 of the Adoption Act should be read in conjunction with Section 6351 of the Juvenile Act, particularly Section 6351(f)(9)(iii)). Thus, pursuant to our Supreme Court's holding in *In the Interest of: D.C.D.*, *a Minor*, we find no merit to Mother's argument. Moreover, the record makes it apparent that Mother has failed or refused to perform parental duties. *See* 23 Pa.C.S.A. § 2511(a)(1). Accordingly, the record overwhelmingly supports the trial court's Section 2511(a) findings.

Prevailing case law requires this Court additionally to engage in a discussion of whether the trial court's order satisfies the requirements of Section 2511(b). Mother presents a similar argument as that which she raised in her Section 2511(a)(1) claim, in that she posits she would have established a parental bond if DHS had provided her adequate services. As we did in our Section 2511(a)(1) analysis, we disagree with Mother's attempt to shift the burden to DHS. *See In the Interest of: D.C.D.*, *a Minor, supra.*

The focus in terminating parental rights under Section 2511(b) is not on the parent's conduct, but rather is on the child's best interest pursuant to Section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Under Section 2511(b), we examine whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). "The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

When considering Child's bond and relationship with Mother, the trial court found that "it was clearly and convincingly established that there was no parental bond, and that termination of Mother's parental rights would not destroy an existing beneficial relationship." T.C.O., at 14. Ms. Fernandez testified that Mother visited Child only twice since June of 2015. N.T., 1/28/16, at 16. Ms. Fernandez stated that Child does not really identify Mother as his mother at this time. *Id.* at 24. Ms. Fernandez further testified that Child would not suffer irreparable harm if Mother's parental rights are terminated. *Id.* Ms. Fernandez concluded that it would be in Child's best interest for the permanency goal to be changed to adoption because Mother has not been compliant with her objectives, nor has she

been compliant with visitation or building a relationship and bond with Child. *Id.* at 22-23.

Child is in a foster home and refers to his foster parent as "Mom." *Id.* at 22. Ms. Fernandez observed that Child is very attached to his foster parent. *Id.* Ms. Fernandez stated that she has observed Child in the foster home, and Child is always happy and smiling. *Id.*

We find that the trial court gave adequate consideration to the developmental, physical, and emotional needs of Child, *i.e.* Child's best interest, in determining that Mother's parental rights should be terminated pursuant to Section 2511(b). The record supports the trial court's best interest analysis. *See In re C.M.S.*, *supra*.

With the above standard of review in mind, we have thoroughly reviewed the record, the briefs, and the applicable law, and we find no abuse of the trial court's discretion in terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). As we need to agree with the trial court's assessment of only one subsection 2511(a) factor and its Section 2511(b) assessment, we need not address Mother's remaining subsection 2511(a) arguments. *See In re B.L.W.*, *supra.*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/12/2016</u>